ready to proceed? Yes, Your Honor. You may. Good afternoon, Your Honors. May it please the Court, A.T.N. Ballard on behalf of the appellants. I'd like to begin by drawing attention to the Rule 28J letter that we just filed concerning the interpretation or the opinion given by the Dubai Appellate Court on the issue of arbitration in Dubai post Decree No. 34. And while the appellee argues that what we're citing is insignificant, I think the appellee has missed the point. We're not asking and citing that decision to this Court as guiding precedent. This Court is obviously not bound to follow an appellate court decision in Dubai. The more interesting and significant issue is what we think is that it brings to bear the issue of international comedy and respect for other jurisdictions. These are significant issues presented in this appeal, and the Dubai decision, we think, recognizes that U.S. courts should leave vexing and contested issues of foreign law to foreign courts where parties have agreed to do just that. As the Supreme Court itself stated in Mitsubishi in enforcing the Forum Selection Clause, we conclude the concerns of international comedy, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context. And it is really, I don't think, subject to reasonable doubt that an American court, a court in the United States, should not be the forum to decide the arbitrability of a dispute involving two foreign entities for a contract that was performed in a foreign country where both sides unquestionably agreed to a dispute resolution process outside of the United States. The conclusion here by the District Court that there was no valid Foreign Forum Selection Clause because of an alleged lack of consent could not be more wrong. The court below made multiple errors in its analysis, and there are several bases under which this court should reverse. First off is the seat or legal place of the parties where the parties consented to the DIFC, the Dubai International Financial Center, as the venue for any disputes and all disputes arising under the subcontract provided that appellants did not exercise or Dynamic DISA did not exercise its right to arbitrate in Saudi Arabia. The agreement undoubtedly places the seat of resolution of all such disputes in the DIFC, and there is no dispute that the DIFC still exists, period. Baker Saudi has conceded this in their brief, and it was consented to in the subcontract. Under any analysis, whether it's the New York Convention, the Forum Nonconvenience Analysis, this valid enforceable Forum Selection Clause must be respected and must be enforced based on binding precedent. The DIFC is where all issues of enforceability, including what rules and before whom and who may administer such arbitration, must be decided, not here in the United States. The same result, Your Honors, obtains under the New York Convention. Section 206 of the Convention is very clear. It says a court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. And again, it's very clear that, and nobody has contested, and Appelli has conceded that the seat nominated in the subcontract is the DIFC. As this Court stated in Stolt, the analysis under the New York Convention is very simple. It contemplates a very limited inquiry by courts when considering a motion to compel arbitration, and that the court should compel arbitration if there is an agreement in writing to arbitrate the dispute, the agreement provides for arbitration in the territory of a convention signatory, the agreement arises out of a commercial legal relationship, and a party to the agreement is not an American citizen. If these requirements are met, the Convention requires district courts to order arbitration. The district court confuses consent to arbitrate, which is clear in the subcontract, with how to arbitrate. There is no question that two Saudi Arabian limited liability companies who signed a contract in Saudi Arabia for work in Saudi Arabia with a dispute resolution process requiring mediation and arbitration in foreign locations did not agree to litigate in the United States, or the state court system, which is where Baker Saudi filed its original petition. We discussed in our brief the overwhelming evidence of both parties' intent, as expressed in the subcontract, that all such disputes be resolved either in Dubai or, if appellant so desired, Saudi Arabia. The district court seems to have made its own policy decision that contravenes Congress as set forth in Mitsubishi. As Congress stated in the Mitsubishi case, the Act, referring to the newer Convention, simply creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, a concern which requires that we rigorously enforce agreements to arbitrate. What appellant, excuse me, what appellee is really arguing, Your Honors, is some form of procedural unconscionability. They're saying, yes, we agreed to arbitrate, but we didn't agree to arbitrate like that. They then invent, in quotes, D-I-F-C-L-C-I-A as this forum that is never mentioned in the subcontract, and they say, because we can't arbitrate there, we didn't consent to arbitrate. That argument, Your Honors, brings us squarely to the August 17, 2022 letter, which is the subject of pending motions. In that letter, Baker Saudi, before it filed suit in Louisiana State Court, stated that it wanted to conduct mediation in Dubai, as set out in the contract, and failing that, threatened arbitration pursuant to the terms of the subcontract. Now, Baker Saudi comes before, came before the court, and comes before this court, and says, we can't arbitrate, there's no way to arbitrate, we didn't consent to anything. But before they filed suit, they most certainly had a specific intent to arbitrate, in their own words, pursuant to the terms of the subcontract. Obviously then, Baker Saudi knew that arbitration was possible. Obviously now, Baker Saudi knows that arbitration in Dubai is possible. The most significant thing about that August 17, 2022 letter, Your Honors, is that it's written after the passage of Decree Number 34. So they can't say, well, that was our position before the change in the arbitral forum that they're now arguing. It was written after the passage. So obviously, they looked at it, and they concluded that arbitration in Dubai was both possible and available. The forum non-convenience analysis I want to turn to next, Your Honors, and I think in its forum non-analysis, the district court ignored the applicable presumptions that are based on the concept of international comedy that I began with. As this court stated in Hainesworth, as summarizing the Bremen, as we recently stated in a case implicating these concerns, the Supreme Court has therefore instructed American courts to enforce forum selection and choice of law clauses in the interest of international comedy and out of deference to the integrity and proficiency of foreign courts. A valid forum selection clause controls in all but the most unusual circumstances, and that's the Atlantic Marine case in the Supreme Court. In denying the motion, which was both a forum non-motion and a motion to compel arbitration, the district court cited two cases that simply have no application to these facts. The first was a national Iranian oil company case, and that involved a situation post-1980 hostage crisis where a contract said, you must arbitrate in Iran. The national oil company of Iran came to Mississippi, filed suit in federal court, then sought to try to force arbitration in Mississippi. So those facts have no application here. It's not even remotely close. The Ranzi case, also cited by the district court, involved a finding at the district court level that the explicitly designated forum in the agreement was so integral to the party's agreement to arbitrate that without it, it couldn't be enforced. There's no such finding here, and there's no support in any of the subcontract language for such a finding. At the district court level, it was Baker Saudi's burden of proof, not ours, not appellant's, to offer evidence to establish the integrality of this invented DIFC-LCIA forum. They didn't meet that burden, nor could they, because the actual institute is called the Dubai International Financial Center Arbitration Institute. That was the institute that was replaced by the Dubai International Arbitration Center, and the DAI, as we've noted in our earlier in the subcontract, is the DIFC-LCIA as a forum. Only the Dubai International Financial Center as the seat, or the forum for all legal disputes, that is mentioned in the subcontract. That was integral to the subcontract, and that still exists. The subcontract further contemplates future changes to rules. It says explicitly, from time to time, in force, meaning that future changes and differences from when the contract was signed in 2017 had to have been contemplated at execution. We've outlined in our brief how the DIFC-LCIA rules, which was referenced in the subcontract, can still be used to affect an arbitration among these parties. Amazingly, not in a single place in the subcontract can you find the words that the parties agreed to arbitrate exclusively before the DIFC-LCIA. That was Baker Saudi's burden. They can't meet it. It's simply not in the agreement. We've cited to the court the many cases where arbitration agreements involving a defunct or changed forum are still enforced. There's the Khan versus Dell case, 669 Fed Third 350 from the Third Circuit, and there's a bevy of district court cases mostly from the Southern District of New York involving this issue. Furthermore, the FAA, the Federal Arbitration Act, specifically contemplates a situation where an arbitration forum, an arbitral forum in a contract, may be defunct, and it has a mechanism to replace that, and we've addressed that in our brief. I believe the forum should be the DIAC or the DIFC. As we noted in our brief, Judge Clement, I think based on the language of 206, if the court decides to go under the New York Convention, then an order directing the parties to a dispute resolution process monitored by the seat, DIFC, would be appropriate. The presumption of enforceability of a forum selection clause may only be overcome by a clear showing that the clause is unreasonable. That's in Weber, that's in Hainsworth, and many other cases, some of which your Honors have participated in. And with that, unless there are any further questions, I'll reserve the remainder of my time for rebuttal. Thank you, Counsel. Good afternoon, Your Honors. May it please the Court, Paul Trepani on behalf of Beggar Hughes, Saudi Arabia Company, Ltd. In summary, Your Honors, the District Court correctly followed the plain terms of the party subcontract, as well as the terms of the New York Convention, and this Court's well-established jurisprudence, as well as the jurisprudence of the Supreme Court of the United States, in denying appellant motion to compel arbitration when the agreed-upon forum has been, especially here, the DIFC-LCIA, has been dissolved. And of course, following the party's contract is important, not just because it's the law between the parties, as it is in all contracts, but particularly with respect to arbitrations. There is no dispute here that this contract is governed by the New York Convention. There's suggestions in the briefing that there's a conflict of law analysis that has to apply. The fact of the matter is, the United States, Saudi Arabia, and the United Arab Emirates are all signatories to the New York Convention. The New York Convention applies. And the New York Convention, as codified by the U.S. Code, says specifically that a district court may compel arbitration only, quote, in accordance with the agreement of the parties. And it continues. A court may appoint arbitrators, quote, only in accordance with the provisions of the agreement. It's the provisions of the agreement that are of utmost importance. Then you... What we would say is, we specifically requested the intent to arbitrate with the DIFC-LCIA specifically, not just a general, you know, we're going to arbitrate generally. If we look at the specific terms... So, specifically with respect to the contract, and we can go through those provisions. While another forum could use those rules, there are other provisions of the contract that specifically reference the DIFC-LCIA and why that was important. Particularly, and I'll focus the court on one particular provision specifically, under Schedules E, Section 2.2, that's on page 211 of the record, it provides that if there's a dispute between the parties about selecting the chairperson of the arbitration, the third arbitrator, it was specifically, the power was given only to the LCIA court, which is the supervising court of the DIFC-LCIA, to select that third arbitrator. And that's really important here, because when you look at it, it's that, and counsel just referenced this earlier, where they say that the rules can change over time. Well, the LCIA, which is a supervising court of the DIFC-LCIA, that's the London Court of International Arbitration, it is one of the most well-established, oldest international arbitration societies in the world. It's highly respected in international communities and with the corporations internationally. And so to have that comfort, and that's why people select particular arbitration forums and societies in particular, is because they have a certain comfort with an arbitration society to understand how the arbitration will be supervised. And, for example, if the rules can change at any time, you particularly want to make sure that the forum you have selected is an arbitration forum that will not do anything unexpected or something that you believe that you have comfort with them if they change those rules in the future. So going back, Your Honors, particularly when we talk about the importance of the contract language, the New York Convention itself specifically talks about, and this is Article V of the Convention, says an arbitration award can only be enforced to the extent, again, it is found that it can be not enforced if it was not in accordance with the agreement of the parties. Again, focusing on what do the parties agree. This is not inconsistent with U.S. courts, and it's certainly not contrary to U.S. jurisprudence, that says that arbitration is a matter of consent, not coercion. And it's not a policy, as the United States Supreme Court said in Morgan v. Sundance, of promoting arbitration in general. What the court said there was the federal policy is about treating arbitration contracts like all others, not about fostering arbitration generally. So let's get back to the contract itself. What does the contract terms actually say? We've heard representations that there's no reference to a specific forum here other than going to the seat of arbitration. That is simply incorrect. When you look at the terms of the contract, it says specifically, disputes shall be referred by either party to and finally resolved by arbitration under the arbitration rules of the DIFCLCIA. So it's clear that the contract contemplated both referral of the dispute to that arbitration society and using that party's rules. And we can't read that language, referral, out of the contract, specifically because a dispute can't be referred to rules. It has to be referred to a specific society. But even if there's any kind of dispute— Well, I thought I was reading along with you. I'm reading the dispute shall be referred by either party to and finally resolved by arbitration under the arbitration rules of the DIFCLCIA. Is that the part you just read? That is correct, Your Honor. So that's a reference to rules. So as we read that, and we can show the other parts of the contract that clarify this, we read it as it should be referred by either party to and under the rules of the DIFCLCIA. But I don't know why I need another clause to clarify that. When I read that, it's pretty clear to me. And I understood, Your Honor. And so if you look at section 20.4.5.3, which is on page 192 of the contract, it specifically discusses, quote, recourse to the DIFCLCIA arbitration provided in Schedule E. So talking about specifically the DIFCLCIA. Moreover, in that same section, it talks about Baker Hughes's requirement to participate in any proceedings, quote, at the DIFCLCIA in Dubai. That is very specific. We're talking about a proceeding at that specific arbitrable forum. Even when in section E, section 2.1, when it's discussing mediation. So like many contracts, it has a provision where it could be mediated first before arbitration. It talks about whether there are, quote, scheduling restrictions of the DIFCLCIA. So again, if we're just talking about rules, rules can't have scheduling conflicts. We're talking about a specific arbitrable forum. And so we understand that maybe they might cast doubt on one provision of Schedule E. But looking at the contract as a whole, as we should when we're interpreting contracts, it is clear that we're talking about a specific arbitrable forum. And as we mentioned before, that's even further buttressed by the fact that if there was a dispute about the selection of the third arbitrator, the chairperson, that dispute is decided by the LCIA court, the supervising court of the DIFCLCIA. If we were just going to any arbitrable society anywhere in Dubai or anywhere else in the world, there would be no mechanism to have the supervision of the LCIA court. And so that's why that provision is of the utmost importance. In fact, when this Court has looked at provisions where a specific forum has either become defunct or dissolved, the Court has found that it cannot rewrite the terms of the contract to allow arbitration somewhere else. In particular, Your Honors, we cited the Poole v. Insurance Court case. In that case, the Court held that if the party's agreement specifies that the laws and procedures of a particular forum shall govern any arbitration between them, that forum selection clause is an important part of the arbitration agreement, and therefore the Court need not compel arbitration in a substitute forum if the designated forum becomes unavailable. And in the Poole v. Insurance Court case, that was only talking about reference to rules and saying even if you're referencing their rules, it's that forum of that arbitration study that is important. But going even further, the case we cited earlier was the National Iranian Oil Company that was discussed by appellants. Here, I think they missed the point completely. There, the Iranian Oil Company tried to get arbitration in Mississippi despite the fact that the chosen forum was Iran. And they claimed that because of security concerns after the Islamic Revolution, Mississippi was a proper forum, and they argued in that case that the choice of Iran as a forum was not integral. And this Court disagreed there and found that the fact that the president of the Appeal Court of Tehran could appoint an arbitrator if there was a dispute regarding the selection of a third chairperson, that made it self-evident of the importance of the arbitration forum in Iran. That is exactly what we have here, Your Honors. We have a provision in our contract that specifically says that if there is a dispute between a selection of the chairperson, that that dispute will be decided by the supervising court, the LCIA, the one in court of international arbitration, would decide that matter. What do you say to his claim that in this August 17, 2022 document, you indicated a desire to pursue arbitration pursuant to the terms of the contract? Thank you for bringing that up, Your Honors. A couple things first. First of all, we think the reference to that document, which is not in the record and was never raised in the district court proceedings, is improperly included in their reply brief. Not only because it's not in the record, but it's also clearly in the face of it a confidential settlement communication under 408. But even if this court were to look at the substance, the assertion that there was any consent to go to this revamped arbitration society called DAAC in Dubai is simply false. First, if you look at the substance of that letter, that letter only discusses mediation. We're only talking about whether they would agree to some sort of mediation. Mediation, arbitration, even if we were to consent to go to DAAC for mediation, that can't be then imputed as some kind of consent to go to another arbitrator, another arbitration panel for arbitration. But even so, you look at the language of this, this was Baker Hughes proposing a mediation with DAAC conducted in some ad hoc fashion with the LCIA. So that shows, one, it's just a proposal, and two, it shows the importance that the parties put on having some sort of proceeding with the LCIA involved. And so let's just take a step back here. The DIFC-LCIA was a joint partnership with the Dubai Institute of Arbitration and the LCIA. And it was well-respected because, again, with the involvement of the LCIA, it gave a certain credibility to and security with the proceedings. It wasn't until September of 2020 where the decree was issued, in which, without LCIA's input, it wasn't like they had some kind of disagreement, just unilaterally, that joint partnership was dissolved by the government of Dubai. And so the fact that Baker Hughes in this letter is trying to come up with some ad hoc procedure to maybe get the LCIA involved shows that they understood that the DIFC-LCIA had been dissolved, that the whole intent was to have the LCIA as part of their proceedings, and were trying to find some consent to get them involved. And so what it really shows, as this letter shows, is that it was the intent of the parties to have the arbitration with the DIFC-LCIA. It actually strengthens Baker Hughes' position that it wasn't being inconsistent. Their understanding that the contract required arbitration with the DIFC-LCIA was of the utmost importance. And in any event, even if you look at that letter, it's talking about mediation, and it says, look, we're trying to work this out, but if we can't work this out, we'll utilize whatever courts, tribunals, or other legal procedures or mechanisms to recover. It's clearly recognizing there is this unknown quantity with respect to the dissolution of the DIFC-LCIA. And they're saying this might have to go to the courts because the chosen arbitral forum selected by the parties under the plain language of the subcontract is no longer existent. We've talked about this court's prior rulings with respect to what happens when the chosen forum becomes defunct or dissolves. And the fact of the matter is this court's prior rulings on that issue are not inconsistent with courts all across the country. Specifically, the Third Circuit has found, and this is the Attic case, found that when the contract called for the Cheyenne River Sioux Tribal Nation as the arbitral society, when it was found that that society did not exist, the Third Circuit held... Sorry, this was the Eleventh Circuit. The Eleventh Circuit held they could not rewrite the terms of the contract, and so it could not be arbitrated like it was called for in the contract. The Third Circuit... You said it could not be arbitrated like it was called for in the contract. Was the determination that it couldn't be arbitrated at all? Right, it could not be arbitrated because the agreed-upon forum no longer existed. The same finding was found in McDonald case in the Third Circuit. Again, because the arbitral forum, the CRST, was not available, the court held that you could not rewrite the party's contract to require arbitration somewhere else. Similarly, the Second Circuit in the Henry Solomon case, that's a case that's been cited multiple times by this very court with approval, says that looking at... There, in that case, the arbitral tribunal was the New York Stock Exchange Arbitration Tribunal who refused to hear the case, and the court said, look, if the arbitration tribunal will not hear it, and that was the agreement of the parties, we can't rewrite the contract to have you to go somewhere else. One thing that appellant referenced was there's a mechanism under the FAA to call for, you know, to appoint another arbitrator. This, again, in the Henry Solomon case in the Second Circuit, which was cited with approval for the Fifth Circuit on this very reason, said that none of the prior district court cases stands for the proposition that district courts may use Section 5 of the FAA to circumvent the party's designation of an exclusive arbitral forum. So you can't use Section 5 of the FAA to rewrite the party's contract and allow them to arbitrate somewhere else. Reference was made during our argument about this supplement that appellants made about a decision in Dubai, and they say, well, you know, our argument was that it's not binding on this court. That is not what our argument is on that case. The fact of the matter is if you look at the Dubai opinion, it's very limited in explaining what the underlying facts are, what was the agreement of the parties, what was the contract language, was it just the rules, or was it appointment by the LCIA court, like we have in this case? It was silent. And so what we're saying there is to be able to use that court for any kind of guidance in this case really is not helpful. What we cited, and we hope you'll be able to look at, we supplemented with a case out of Singapore, and that court case is far better reasoned and has much more analysis in it with why the court could not rewrite the party's agreement. There, just like in this case, the contract called for referral to the DIFC and under the rules of the DIFC, LCIA, and the court said that that was sufficient to show that it was integral that the parties intended to go to the DIFC-LCIA, and the fact that that arbitrable forum had been dissolved precluded them from then rewriting the contract and requiring arbitration somewhere else. And so we would represent your honors that the Singapore decision that we supplemented this court with is much better reasoned and shows you why precisely what planets, sorry, what appellants are seeking is not warranted. Briefly, I'll touch on this issue of forum nonconvenience. The very issue of forum nonconvenience, the first issue is whether there exists a mandatory enforceable forum selection clause. And here we don't have that. Throughout the contract, it specifically requires arbitration at the DIFC, it talks about LCIA, it talks about arbitration with the DIFC-LCIA throughout the contract. That forum no longer exists and therefore it can't be compelled to go to any other forum. I also wanna clear up, your honors, briefly this idea about the seat of arbitration. So in all the cases where we cited, particularly where this circuit has said when you've named a particular arbitration society and that arbitration society does not exist, you cannot rewrite the terms of the contract, they're focusing as the arbitration society as the forum. They don't focus on the seat of arbitration. Now, in the district court cases that appellants have cited, they've cited the seat of arbitration in cases where there is no specific arbitrable forum or society named. So in that instance, when there's no specific arbitration society and you just have the seat, courts will focus on the seat. But those are all distinguishable from this particular instance. Your honors, so unless you have anything further. All right, thank you, your honors. Thank you, your honors. Thank you. Rebuttal. Yes, your honors. Nobody on our side, on the appellant's side, is asking for this court to rewrite the subcontract. Rather, to the contrary, we're asking that the subcontract be enforced. Judge Graves, you made a very salient point, made me realize that sometimes as lawyers, we miss very simple truths. The language of the subcontract could not be any clearer that the reference is to the rules. I could have saved a lot of time checking whether I came in at 13,700 words and met the time by just focusing on that language. It's very clear that that is a reference to the rules. It is very, not a forum, and it's very clear that those rules are in existence and can be enforced. Judge Graves, you noted the August 17th letter. In August of 2022, almost two years ago, Baker Saudi was ready to start arbitration, quote, pursuant to the terms of the subcontract, close quote. You can cherry pick and dress up the words and say it was just a proposal, it was just this, all you want. You cannot hide from that fundamental truth pursuant to the terms of the subcontract. Well, he says that wasn't a part of the record and we shouldn't consider that. And, Your Honors, I would say to that point, it was cited in their petition as a compliance. It is not part of the record, but we think, and we've cited the cases that bring up that we have a duty when a party takes a contrary position to alert the court to that, and I think in the interest of justice and a resolution of this appeal, that should be considered, Your Honors. And we've discussed that in the pending motion. The concept, this concept of the LCIA that's now being focused on, that wasn't argued in the district court, at the district court level. If, and I would submit to Your Honors, that's absolutely not. The LCI certainly could appoint the chair. There is no question, Judge Clement, that the parties agreed to arbitrate, period. And the how of that arbitration, if that becomes a dispute, belongs somewhere else, not here. If, in fact, they think now that the London Court of International Arbitration cannot appoint the chair, then it was their burden at the district court to show that and show that the agreement couldn't be enforced. And to your question, Judge Clement, I pondered it a little bit more. To your question of the relief and how relief should be shaped, I believe the safest and most direct term, what the parties intended, is that in ordering Baker Saudi to initiate the dispute resolution process, as provided for in the subcontract, is the correct result here. Because there is an election for Saudi Arabian arbitration at appellant's discretion. That's in the contract as well. And maybe they do want to arbitrate in Saudi Arabia if the dispute resolution process as required in subcontract is honored. And so I think in terms of relief, a simple reference to initiating the dispute resolution process in Dubai or as set forth in the subcontract suffices here. There are at least three independent bases, Your Honors, to overturn the district court. There's the concession that the DIFC is the seat of the forum, that's the venue, that's where all of these issues should be litigated. There's the New York Convention, Section 206, and there's the forum nonconvenience analysis. And with that, Your Honors, unless there are additional questions, appellants rest their argument. All right. Thank you, Counsel. Court will take this matter under advisement. Thank you.